**IN THE SUPERIOR COURT OF GUAM**

THE PEOPLE OF GUAM, )
                        )     **CRIMINAL CASE NO. CM0004-12**
     vs.                  )
                        )     **DECISION AND ORDER**
ANGELICA LEIGH NORTHARD, )
                        )
        Defendant.       )
                        )

## INTRODUCTION

This matter came before the Honorable James L. Canto II on Defendant's motion to suppress, filed September 27, 2012. Oral arguments were heard on October 15, 2012. Assistant Attorney General Gabrielle L. Rossi, Esq. appeared on behalf of the Government and Assistant Public Defender Suresh Sampath, Esq. represented Defendant. Having considered the parties' briefs, oral arguments, and the applicable law, the Court now issues the following Decision and Order.

## BACKGROUND

Defendant is charged with driving under the influence of alcohol and speeding based upon the following events. On December 30, 2011 at approximately 11:27 p.m., Guam Police Officer Roy T. Pablo stopped Defendant's car after he followed her proceeding at seventy (70) miles per hour from Asan to Sumay and observed her vehicle straddle multiple lanes. (Testimony of Roy T. Pablo, Record Log at 3:59, Oct. 15, 2012.) Officer Pablo spoke with the passenger of Defendant's vehicle while Guam Police Officer J. Edwards spoke with Defendant. *Id.* During this time, Officer Pablo could see that Defendant had bloodshot eyes and he smelled alcohol on the Defendant's person. *Id.* Officer Pablo watched Defendant answer questions until approximately 11:37 p.m. before she participated in standardized field sobriety tests conducted by Officer Edwards. *Id.*

Defendant failed the field sobriety tests and the officers searched her vehicle because

they smelled something. (Declaration of James C. Collins, 2, Sept. 24, 2012; Declaration of Angelica L. Northard, 1-2, Oct. 15, 2012.)[1] Defendant was transported to the Precinct Station, arrested at approximately 12:34 a.m., and advised of her implied consent rights at either 12:30 a.m. or 12:36 a.m. before she performed a breath test. *Id.* Defendant was advised of her rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) verbally and in writing before she signed a written waiver at 1:07 a.m. and made statements to the police. *Id.*

On September 27, 2012, Defendant moved to suppress all evidence obtained from the investigative detention because it lasted longer than fifteen (15) minutes in violation of 8 GCA § 30.30. Defendant asserts her initial detention was an unreasonable seizure and that all evidence obtained during or as a result of the seizure must be suppressed.

The Government opposes suppression on the bases that: 1) a detention did not occur; 2) Defendant consented to an extended detention when she participated in field sobriety tests; 3) probable cause to arrest appeared before 15 minutes of alleged detention; 4) suppression should be limited to evidence obtained after 15 minutes of detention and before arrest; and 5) evidence obtained after the voluntary waiver of rights under the implied consent rules and *Miranda v. Arizona*, 384 U.S. 436 (1966) is attenuated from an unreasonable detention and admissible.

## DISCUSSION

### 1. The Stop and Frisk Statutes

The Fourth Amendment permits brief investigative detentions that are based upon a reasonable suspicion of illegal conduct. *People v. Johnson*, 1997 Guam 9 ¶ 4 (*citing Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968)). This principle is codified in the "Stop and Frisk" statutes at 8 GCA Chapter 30. *See People v. Cundiff*, 2006 Guam 12 ¶ 40.

*///*

---

[1] At the October 15, 2012 suppression hearing, both the Government and Defendant presented evidence in the form of written declarations made under penalty of perjury (thus an affidavit per 6 GCA §§ 4308 & 7302, and acceptable as testimony per 6 GCA § 7301). *See People of Guam v. Santos*, 1999 Guam 1 ¶ 21. The Court shall consider the undisputed facts of these declarations. *See Id.* Defendant objects to the hearsay nature of the Government's

Title 8 GCA § 30.10 states:

> Whenever a peace officer encounters any person under circumstances which reasonably indicate that such person has committed, is committing or is about to commit a criminal offense, the peace officer may detain such person.

Title 8 GCA § 30.20 states:

> Detention pursuant to § 30.10 shall be for the purpose of ascertaining the identity of the person detained and the circumstances surrounding his presence abroad which lead the officer to believe that he had committed, was committing, or was about to commit a criminal offense, but such person shall not be compelled to answer any inquiry of the peace officer.

Title 8 GCA § 30.30 states:

> No person shall be detained under the provisions of § 30.10 longer than is reasonably necessary to effect the purposes of that section, and in no event longer than fifteen (15) minutes. Such detention shall not extend beyond the place where it was first effected or the immediate vicinity thereof.

Title 8 GCA § 30.40 states:

> If at any time after the onset of the detention authorized by § 30.10, probable cause for arrest of the person shall appear, the person shall be arrested. If after an inquiry into the circumstances which prompted the detention, no probable cause for the arrest of the person shall appear, he shall be released.

Thus under Guam law, a police officer having a reasonable suspicion regarding criminal activity by a particular individual may detain that person to investigate said suspected criminal activity. 8 GCA §§ 30.10 & 30.20. When this investigative detention reveals probable cause for arrest, "the person shall be arrested." 8 GCA § 30.40. However, "in no event [shall a person be detained] longer than fifteen (15) minutes," and the person "shall be released," if no probable cause for arrest appears. 8 GCA §§ 30.30 and 30.40.

In this case, the parties dispute the application and effect of the 15 minute time limit for investigative detentions. The Government argues that any appearance of probable cause to arrest within 15 minutes removes the need to apply the time limitation. Alternatively, the

declaration, but the Court finds the hearsay reliable to determine preliminary facts and not offensive to the integrity and fairness of the proceeding. *See Id.* at ¶¶ 19-21.

Government contends that any suppression applies only to evidence obtained after 15 minutes and before arrest. Defendant asserts that if she is not arrested or released within 15 minutes pursuant to the Stop and Frisk statutes, then all evidence from the investigative detention must be suppressed unless it comes from an independent source.

**2. Violation of the 15-Minute Time Limit**

    a. <u>Meaning of the "Stop and Frisk" Act</u>.

    Title 8 GCA Chapter 30 and the 15-minute time limit are derived from former Penal Code Sections 735 through 736.4. *See* 8 GCA § 30.10, COMMENT; Guam Pub. L. 10-99 (June 19, 1969). Former Sections 735 through 736.4 were enacted as original statutes and without any statement of legislative findings or intent. P.L. 10-99. There is an absence of controlling authority to interpret the 15 minute time limit.[2] Without clear legislative intent or authority to the contrary, the Court shall interpret the Stop and Frisk statutes according to their plain meaning. *See Guam Resorts, Inc. v. G.C. Corporation*, 2012 Guam 13 ¶ 7 ("When the plain reading of a statute is 'clear on its face' and yields to an unambiguous definition, we will not look past that plain reading."); *Castino v. G.C. Corp.*, 2010 Guam 3 ¶ 29 ("A plain reading construction is appropriate where the statute lays out specific requirements and indicates exactly what is necessary for compliance without ambiguous terms."); *People v. Lau*, 2007 Guam 4 ¶¶ 11-14.

    An examination of the plain language of the 15-minute time limit within the context of 8 GCA Chapter 30 does not reveal ambiguity or absurd and unworkable consequences. *See*

---

[2] For example, Guam law does not explicitly discredit any detention beyond the time limit nor does it conversely hold that the time limit is merely a guide for law enforcement. *Compare Florida v. Royer*, 460, U.S. 491, 500, 103 S.Ct. 1319, 1325 (1983) ("[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."), *and U.S. v. Sharpe*, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575 (1985) ("In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant."), *with U.S. v. Place*, 462 U.S. 696, 709 n.10, 103 S.Ct. 2637, 2646 (1983) ("We understand the desirability of providing law enforcement authorities with a clear rule to guide their conduct. Nevertheless, we question the wisdom of a rigid time limitation. Such a limit would undermine the equally important need to allow authorities to graduate their responses to the demands of any particular situation.").

*Sumitomo Const., Co., Ltd. v. Government of Guam*, 2001 Guam 23 ¶ 17; *People v. Flores*, 2004 Guam 18 ¶ 18. The Stop and Frisk statutes state that a person shall be detained, "in no event longer than fifteen (15) minutes." 8 GCA § 30.30. If probable cause to arrest appears, "at any time after the onset of the detention...the person shall be arrested." 8 GCA § 30.40. If probable cause does not appear, "he shall be released." *Id.* This language clearly contemplates that any investigative detention must end by arrest or release within 15 minutes. Even where probable cause to arrest appears within 15 minutes of detention, the plain language of 8 GCA § 30.30 does not allow the detention to continue beyond 15 minutes. When a person is detained without arrest for more than 15 minutes, although probable cause to arrest may appear, the Stop and Frisk statutes are violated.

To posit that probable cause arising before the expiration of 15 minutes somehow negates the statute's time limit is to say that an officer may detain an individual indefinitely without an arrest just because probable cause arose within the first 15 minutes. This would be an illogical reading of the statute that subverts its entire purpose, and one which this Court cannot reasonably adopt. The Guam Legislature has apparently narrowed the ability of any officer to graduate an investigative detention according to the demands of a particular situation, as the U.S. Supreme Court might otherwise afford in the absence of an explicit time limit. Based upon the plain meaning of the Stop and Frisk statutes, the Court holds that an investigative detention must cease by arrest or release within 15 minutes of its initiation.[3]

The Government argues that Defendant's voluntary consent to undergo a Standardized Field Sobriety Test vitiates the effect of 8 GCA § 30.30, tolling the 15-minute clock.[4] However, the plain language of the statute is inescapable. It states in pertinent part: "No person shall be detained ... longer than is reasonably necessary to effect the purposes of [Section 30.10], and in

---

[3] The Court recognizes this law's possibly impairing effect upon meaningful law enforcement investigation technique; however, this Court is duty-bound to administer the law as the Legislature intended and may do no more. The only alternative is for the Legislature to re-examine whether the statute indeed withstands an effective application to real-world circumstances within the reasonable balance between individual liberty interests and the Government's law enforcement interests.

[4] *See generally, People v. Santos*, 1999 Guam 1 ¶¶ 33-37; *People v. Chargualaf*, 2001 Guam 1 ¶¶ 14-15

no event longer than fifteen (15) minutes. 8 GCA § 30.30 (emphasis added). This unconditional language unequivocally imparts that no circumstance may serve as an exception to the time limit, be it exigency or even an express waiver by the detainee.

### b. Application to the Facts of this Case.

In order to apply this rule to the present case, the Court must further examine the difference between an investigative detention and an arrest. Under Guam law, "a person has been seized under the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Cundiff,* 2006 Guam 12 at ¶ 21 (*quoting United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877 (1980)). An investigative detention under 8 GCA Chapter 30 is consistent with a Fourth Amendment seizure. *See e.g. Cundiff,* 2006 Guam 12 at ¶ 40; *Terry,* 392 U.S. at 16 ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."). For this reason, an investigative detention occurs when a reasonable person would believe he is not free to leave under the circumstances.

Guam law defines an arrest as, "an actual restraint of the person, or…submission to the custody of the person making the arrest." 8 GCA § 20.10. An officer must announce the arrest pursuant to 8 GCA § 20.25, but the declaration is not an absolute requirement for a lawful arrest based upon probable cause. *Cundiff,* 2006 Guam 12 at ¶¶ 35-36 and 25-26 (*quoting People v. Maddox,* 294 P.2d 6, 9 (Cal. 1956); and *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225 (1964)). Any physical restraint that curtails movement constitutes an arrest. *Id.* at ¶¶ 19-20 (*quoting Sibron v. New York,* 392 U.S. 40, 67, 88 S.Ct. 1889 (1968)).[5] Even without physical restraint, a severely intrusive detention may constitute an arrest. *Id.* at ¶¶ 21-22 (*quoting Dunaway v. New York,* 442 U.S. 200, 216, 99 S.Ct. 2248 (1979) (custodial interrogation is an arrest and requires probable cause)).

In this case, Officer Pablo stopped Defendant's car at approximately 11:27 p.m. because she was speeding and straddling traffic lanes. A traffic stop is, "unquestionably a seizure within

---

[5] *Cf. People v. Farata,* 2007 Guam 8 ¶¶ 44-45; *People v. Santos,* 2003 Guam 1 ¶ 51 (police custody ultimately determined by use of physical restraint comparable to formal arrest).

the meaning of the Fourth Amendment." *People v. Rasauo*, 2011 Guam 1 ¶ 26 (*citing Berkemer v. McCarty*, 468 U.S. 420, 436-439 (1984)). *See also People v. Chargualaf*, 2001 Guam 1 ¶ 17. Under the circumstances of a traffic stop, Defendant was detained pursuant to 8 GCA Chapter 30 because she could not reasonably believe that she was free to disregard Officer Pablo and drive away. *See Mendenhall*, 446 U.S. at 554 (no detention if person can disregard and walk away). Defendant was not physically restrained until she was transported to the Precinct Station and thereafter formally arrested at 12:34 a.m. *See Hayes v. Florida*, 470 U.S. 811, 816, 105 S.Ct. 1643, 1647, 84 L.Ed.2d 705 (1985) (arrest occurs when police forcibly remove person from where they are entitled to be and transport to police station); *Cundiff* at ¶¶ 19-24. Although the sequence and exact times of the transport and arrest are not precisely clear, the Court finds from the evidence presented that Defendant's arrest occurred more than one hour after the onset of the detention at 11:27 p.m. For this reason, the investigative detention violated the 15-minute time limit of the Stop and Frisk statutes.

**3. The Exclusionary Remedy**

The Stop and Frisk statutes do not provide an explicit remedy for a person who is detained by law enforcement for more than 15 minutes. *See* 8 GCA Chapter 30. However, an unreasonable investigative detention implicates the Fourth Amendment under Guam law. *See e.g. Cundiff*, 2006 Guam 12 at ¶ 40; *Chargualaf*, 2001 Guam 1 at ¶ 20 ("[T]he Fourth Amendment is only at issue where the police detain or seize an individual while posing investigative questions.") (*citing Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324 (1983)). When the Fourth Amendment is violated by an unlawful seizure or investigative detention, evidence obtained during the detention must be suppressed pursuant to the exclusionary rule. *See e.g. Cundiff*, 2006 Guam 12 at ¶ 51; *Terry*, 392 U.S. at 13-15. Evidence that is obtained during or derived from an unlawful detention must be suppressed pursuant to the fruit of the poisonous tree doctrine. *Cundiff*, 2006 Guam 12 at ¶ 41 (*citing Wong Sun v.*

*United States*, 371 U.S. 471 (1963); *People v. Santos*, 2003 Guam 1 ¶ 64).[6] On this basis, the Court shall apply the ordinary exclusionary rule and fruit of the poisonous tree doctrine to the Stop and Frisk statutes and suppress all evidence obtained or derived from an unlawful detention that exceeds the time limit; specifically meaning any and all evidence obtained during the entire detention, and not just that evidence obtained after the 15-minute time limit has elapsed.

In order to suppress evidence under the fruit of the poisonous tree doctrine, the Court must determine, "whether the challenged evidence was come at by exploitation of the initial illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Cundiff*, 2006 Guam 12 at ¶ 41; *Santos*, 2003 Guam 1 at ¶ 65 (*quoting Segura v. United States*, 468 U.S. 796, 805-805, 104 S.Ct. 3380, 3385 (1984)). *See also Segura*, 468 U.S. at 815 ("[E]vidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of the discovery of the evidence."). The coercive effect of an illegal seizure may attenuate and dissipate with the passage of time. *Santos*, 2003 Guam 1 at ¶ 65 (*quoting Oregon v. Elstad*, 470 U.S. 298, 311-312, 105 S.Ct 1285, 1294 (1985)).

In this case, the unlawful Stop and Frisk detention ended when Defendant was transported to the Precinct Station and arrested at approximately 12:34 a.m. At some point during this time, Defendant was advised of her implied consent rights at either 12:30 a.m. or 12:36 a.m. before she performed a breath test. Defendant subsequently waived her Miranda rights in writing at 1:07 a.m. and made statements to the police. The short passage of time between the illegal detention and the evidence collected at the police station by itself does not likely dissipate and purge the taint of the illegality. *See Brown v. Illinois*, 422 U.S. 590, 604-605, 95 S.Ct. 2254, 2262 (1975) (statement separated from illegal arrest by less than two hours

---

[6] *See also Nix v. Williams*, 467 U.S. 431, 442-443, 104 S.Ct. 2501, 2508 (1984) ("The core rationale consistently advanced by this Court for extending the exclusionary rule to evidence that is the fruit of unlawful police conduct has been that this admittedly drastic and socially costly course is needed to deter police from violations of constitutional and statutory protections. This Court has accepted the argument that the way to ensure such protections is to exclude evidence seized as a result of such violations notwithstanding the high social cost of letting persons obviously guilty go unpunished for their crimes. On this rationale, the prosecution is not to be put in a better position than it would have been in if no illegality had transpired.").

does not purge the taint of illegal arrest). Furthermore, the implied consent warning and *Miranda* warning alone do not purge the taint of the illegal detention. *Id.* at 601-603. In order to determine whether Defendant's breath test and statements are purged of the taint of the illegal detention, the Court should consider the totality of the circumstances, including: 1) the temporal proximity between the illegal detention and the evidence; 2) the presence of intervening circumstances; and 3) particularly, the purpose and flagrance of the illegal conduct. *Chargualaf*, 2001 Guam 1 at ¶ 53 (*citing Brown*, 422 U.S. at 603-604).

As discussed above, the close temporal proximity between the illegal detention and the evidence collected at the police station does not purge the taint of illegality. Furthermore, there are no intervening circumstances to purge the taint of the illegal detention. *See Johnson v. Louisiana*, 406 U.S. 356, 365, 92 S.Ct. 1620, 1626 (1972) (lineup identification is purged of illegal arrest when conducted with counsel and after magistrate hearing to advise rights and commit under bail). However, it is particularly important here that the illegal detention did not have an illegal purpose or constitute flagrant illegal conduct. During the period of unlawful detention Officer Pablo observed indicators of Defendant's intoxication and he observed Officer Edwards question Defendant, conduct standardized field sobriety tests, and arrest Defendant when she failed the tests.[7] These actions are reasonably tailored to quickly confirm or dispel the suspicion that Defendant drove under the influence of alcohol. *See U.S. v. Sharpe*, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575 (1985). On this basis, the 60 minute detention was not conducted for an illegal purpose nor did it constitute flagrant illegal conduct and the evidence obtained under custody at the police station is purged of the taint of the illegal detention.[8]

For all of these reasons, the police obtained Defendant's custodial breath test and statements by means sufficiently distinguishable to be purged of the primary taint of the illegal

---

[7] The Officers also searched her car on suspicion of a smell but found no evidence.

[8] One example of an illegal purpose or flagrant illegal conduct under the Stop and Frisk statutes is a detention and investigation that exceeds the scope of the officer's reasonable suspicions, and which reveals evidence of wholly unrelated conduct after more than 15 minutes, only because the detention continued indefinitely. *See generally Dunaway*, 442 U.S. at 218-219 (confession inadmissible where defendant was seized without probable cause in the hope that something might turn up).

detention, and those particular statements and test evidence shall not be excluded under the fruit of the poisonous tree doctrine. *See Cundiff*, 2006 Guam 12 at ¶ 41.

///

## CONCLUSION

Based upon the foregoing, Defendant's motion to suppress is hereby GRANTED and all evidence obtained from the onset of the detention until her arrest and custodial waivers shall not be admissible against Defendant.

SO ORDERED this ___26TH___ day of December, 2012.


_____
**HON. JAMES L. CANTO II**
**Judge, Superior Court of Guam**

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam. Dated at Hagåtña, Guam

DEC 2 6 2012

James R. Borja
Deputy Clerk, Superior Court of Guam.